**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GARLAND CLAY RAINWATER,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner, Social Security Administration,<br><br>　　　　　　Defendant. | Case No. 15-CV-491-GKF-FHM |

**REPORT AND RECOMMENDATION**

Plaintiff, Garland Clay Rainwater, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's September 11, 2012, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Edmund C. Werre was held January 29, 2014. By decision dated March 28, 2014, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on June 30, 2015. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 52 years old on the amended alleged date of onset of disability and 53 at the time of the ALJ's denial decision  He has a ninth grade education and formerly worked as a metal fabricator. He claims to have been unable to work since September 5, 2012 as a result of back pain, diabetes mellitus with peripheral neuropathy, asthma/chronic obstructive pulmonary disease (COPD), hypertension, depression, anxiety, and alcohol dependence.

## The ALJ's Decision

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform medium work with no more than occasional lifting up to 50 pounds, frequent lifting or carrying up to 25 pounds, standing/walking 6 hours out of an 8-hour workday. He can have no exposure to temperature or humidity extremes or wetness or irritants such as gases, fumes, and chemicals. Plaintiff is able to understand, remember, and carry out simple instructions consistent with unskilled work that is repetitive and routine in nature. He is able to relate to co-workers and supervisors for work purposes only, with no to

minimal contact with the general public. Plaintiff can adapt to a work situation with these limitations, and his medications would not prevent him from remaining reasonably alert to perform required functions in a work setting. [R. 19].

Although Plaintiff is unable to perform his past relevant work, based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that: the ALJ's RFC is unsupported by the opinions of doctors Lindsay, Cochran, Clayton, and Doty; the RFC is based on factual misperceptions; the ALJ erroneously relied on boilerplate language; the ALJ failed to consider and weigh third party statements; and the ALJ erred in relying on the testimony of the vocational expert.

## Analysis

### Opinions of Doctors Lindsay and Cochran

<u>Limitation to Simple and Routine Tasks</u>

Disability Determination Service (DDS) experts Doctors Lindsay and Cochran each reviewed Plaintiff's mental health records and concluded that Plaintiff was markedly limited in the ability to understand, remember, and carry out detailed instructions. [R. 117, 472]. Adopting the DDS opinions, the ALJ's RFC included the limitations of understanding, remembering, and carrying out simple instructions consistent with unskilled work that is

3

repetitive and routine in nature. [R. 19, 117, 742]. Plaintiff argues that the jobs identified by the vocational expert are beyond this RFC because the Dictionary of Occupational Titles (DOT) rates all of the jobs as having a reasoning level 2 which requires the ability to "carry out detailed but uninvolved written or oral instructions." Therefore, according to Plaintiff, the ALJ erred in relying on the vocational expert's testimony. Plaintiff asserts that the ALJ failed to explain why he did not include all of the mental limitations found by Doctors Lindsay and Cochran and Plaintiff argues that the case should be reversed because the ALJ did not reconcile the conflict between his RFC and their opinions.

The undersigned finds no conflict between the RFC and the opinions of Doctors Lindsay and Cochran and no conflict between the jobs identified by the vocational expert and the RFC. The forms completed by Doctors Lindsay and Cochran contain a check list of various mental activities which are rated as to the degree of limitation. [R. 117, 472-473]. Both doctors checked that Plaintiff was markedly limited in the ability to carry out detailed instructions. However, the actual mental functional capacity assessment which explains the evaluator's conclusions is set out in the narrative portion of the form. [R. 118-119, 474]. Both doctors elaborated that comprehension and memory appear to be adequate for simple tasks and that Plaintiff can comprehend simple instructions that would be given in a work environment. [R. 118, 474]. The doctors concluded:

> Claimant is capable of simple and repetitive work tasks for a sustained period of time and at an appropriate pace and with only limited contact with the general public.

[R. 119, 474].

The doctors' elaboration is not at odds with the RFC or the DOT descriptions of the jobs identified. The DOT rates the General Educational Development (GED) required of

4

the worker for satisfactory job performance. GED addresses: reasoning development; mathematical development; and language (reading, writing, speaking) development. DOT Appendix C– Components of the Definition Trailer, 1991 WL 688702. Reasoning development is rated from 1 to 6, with 6 requiring the most advanced reasoning skills. DOT App. C. The DOT assigns the jobs identified by the vocational expert a reasoning level 2 which requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. DOT App. C, 1991 WL 688702; DOT # 920.587-018, 1991 WL 687916; DOT 706.684-022, 1991 WL 679050; DOT # 713.684-038, 1991 WL 679267; DOT# 209.587-010, 1991 WL 671797. According to Plaintiff, reasoning level 2 jobs exceed the RFC limitation of being able to understand, remember, and carry out simple instructions. The undersigned disagrees. The designation that a job involves carrying out detailed, but uninvolved instructions indicates that every step of the process is defined, but that the process is fairly simple, ie. uninvolved. Although the DDS doctors and the DOT both employ the word "detailed," reasoning level 2 jobs are not inconsistent with the ALJ's findings or the doctor's conclusions. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)(remarking that a DOT reasoning level 2 appears consistent with an RFC limiting performance to simple and repetitive tasks).[2]

---

[2] The undersigned notes that, although Plaintiff's brief only addresses the reasoning level of the jobs identified, reasoning level is not the only measure in the DOT of the complexity of a job. The vocational expert identified jobs with an SVP (specific vocational preparation) rating of 2 as being responsive to the ALJ's hypothetical question which required unskilled work that is repetitive and routine and which involves simple instructions [R. 71]. The SVP rating addresses the time required by a typical worker to learn to perform a job. The training for SVP may be acquired in a school, work, military, institutional, or vocational environment, but does not include the time for a fully qualified worker to become oriented to the special conditions of a new job. DOT, Appendix C–Components of the Definition Trailer, Specific Vocational Preparation, 1991 WL 688702. The DOT rates the SVP for jobs from 0 to 9, with 9 being the most time to learn the job. SVP 2 is anything beyond short demonstration up to and including one month. *Id.* The fact that the vocational expert identified the jobs responsive to the hypothetical question in terms of SVP signifies that the vocational expert understood
(continued...)

### Interaction with Co-Workers

Doctors Lindsay and Cochran found Plaintiff would work well in an environment where he can work mostly alone and with limited requirements to interact with co-workers. [R. 118, 474]. Contrary to Plaintiff' assertion that the RFC fails to contain this limitation, the undersigned finds that the RFC provision that Plaintiff is able to relate to co-workers and supervisors for work purposes only encompasses this limitation. Moreover, in all jobs identified by the vocational expert, the DOT specifies that the jobs have a low level of "people" rating and the "people"[3] aspect of the job is designated as being "not significant."

### Ability to Persist

Doctors Lindsay and Cochran remarked that Plaintiff's ability to persist was variable. [R. 189, 474]. Plaintiff asserts that the ALJ erred by failing to include that limitation in the RFC. However, neither of the doctors expressed the view that Plaintiff was unable to work.

---

[2] (...continued)
SVP to be an appropriate indicator of the complexity of the job.
   In addition, the DOT occupational code also says something about the characteristics and complexity of a job. The first three digits of the occupational code, or DOT number, for a job refer to the type of industry involved and the particularly category of work withing that industry. The middle three digits are worker functions. A separate digit expresses the workers relationship to each of these three groups: data, people, and things. Worker functions requiring more complex responsibility and judgement are given lower numbers. The lowest complexity for each group would be expressed by middle three digits of 687. *See DOT*– Parts of the Occupational Description, 1991 WL 645965. The undersigned notes that the middle three digits for the jobs identified in this case are: hand packager 687; small product assembler 684; and eyeglass frames polisher 587. Part of the DOT number for these jobs thus signifies that the jobs have a low level of complexity. Again, the point is to note that the reasoning level is not the only means the DOT has of addressing job complexity and that the jobs identified are not beyond Plaintiff's RFC.

[3] The DOT assigns ratings to each job that identifies what the DOT describes as "the highest appropriate function" required on the job with respect to dealing with data, people, and things. DOT Appendix B–Explanation of Data, People, and Things, 1991 WL 688701. The "people" rating ranges from the highest rating, 0, which requires mentoring, to the lowest rating, 8, which requires taking instructions. (The "people" ratings are: 0-mentoring; 1-negotiating; 2-instructing; 3-supervising; 4-diverting; 5-persuading; 6-speaking-signaling; 7-serving; 8-taking instructions-helping. DOT App. B). In addition to providing a "people" rating, the DOT job description indicates whether the "people" aspect of the job is "significant," or "not significant."

Based on their review of Plaintiff's mental health records, they concluded that Plaintiff had the capacity to perform simple and repetitive work tasks for a sustained period of time and at an appropriate pace and with only limited contact with the general public. [R. 118, 474]. The undersigned finds no error in the ALJ's formulation of the RFC limitations.

### Dr. Clayton's Opinion

The ALJ relied on the RFC assessment by DDS physician Dr. Clayton who reviewed Plaintiff's medical record and opined as to Plaintiff's physical ability to perform work. [R. 476- 483]. Plaintiff argues that the ALJ erred in giving Dr. Clayton's opinions "significant weight" because Dr. Clayton rendered his opinion before Plaintiff was diagnosed with peripheral neuropathy, asthma, and COPD.

The ALJ gave significant weight to Dr. Clayton's opinion, but did not rely solely on that opinion. The ALJ accurately recounted the medical record generated after Dr. Clayton rendered his opinion and noted the effectiveness of medication for the peripheral neuropathy, asthma, and COPD. [R. 21, 22]. There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); see also 20 C.F.R. §§ 404.1546(c) and 416.946(c). The ALJ's decision reflects that the RFC was appropriately based on the record as a whole. The undersigned finds that the RFC is supported by substantial evidence.

**Dr. Doty's Opinions**

Dr. Doty performed a psychological consultative examination on December 17, 2012. The ALJ quoted Dr. Doty's summary of his findings, as follows:

> His ability to understand work-related mental tasks seemed very low during the [consultative examination], but it is unclear what his baseline level of functioning is. His memory performance was not atypically poor, but his real-life self-report for recall of events appears lacking. His ability to sustain concentration in a real-world situation is seems [sic] very low. His ability to persist in work-related tasks appears very lacking. His ability to socially interact and adapt to the demands of work situations is significantly poor. (Exhibit B8F).

[R. 27, 451]. The ALJ noted that Dr. Doty did not explain how his opinions translate to the type of work Plaintiff would be able to perform. The ALJ stated that he gave Dr. Doty's opinion little weight as the diagnosis is not consistent with the most recent diagnosis by the treating psychiatrist and other treatment sources. [R. 27].

The undersigned finds no error in the ALJ's consideration of Dr. Doty's opinion or the weight accorded that opinion. The ALJ explained his rationale and that rationale is supported in the record. To establish error, the Plaintiff must show that the evidence is so overwhelming that no reasonable ALJ would fail to make the finding Plaintiff asserts is proper. Absent such a showing, the court is bound by the determination made by the ALJ as the finder of fact. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive [.]" 42 U.S.C. § 405(g).[4]

---

[4] *See also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007)(on appeal court reviews only sufficiency of evidence, not its weight); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (court may not reweigh evidence and displace agency choice between two fairly conflicting views, discussing meaning of substantial evidence); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (evidence is insubstantial if it is overwhelmingly contradicted by other evidence).

**Factual Misconceptions**

There is no merit to Plaintiff's assertion that the ALJ's RFC is based on factual misconceptions. Although Plaintiff states that the ALJ determined Plaintiff could afford to regularly consume alcohol, the ALJ's decision contains no such determination. The ALJ mentioned the continued consumption of alcohol in the context of Plaintiff's long history of alcohol related emergency room visits. [R. 20]. The ALJ also mentioned Plaintiff's continued smoking in light of his diagnosis of COPD and asthma. *Id.* The ALJ did not, as Plaintiff seems to suggest, principally rely on smoking as a credibility factor. Plaintiff asserts the RFC is undermined by findings on physical examination that the ALJ did not mention. The findings Plaintiff recites were made on July 28, 2011, [R. 1372-1373], before the September 5, 2012 alleged date of onset of disability. The undersigned finds that none of these factors undermine the ALJ's RFC finding.

**Boilerplate Language**

Plaintiff argues the ALJ erroneously relied on stock boilerplate language. The Tenth Circuit has made it clear that in the absence of a more thorough analysis, the use of boilerplate language is insufficient to support an ALJ's credibility determination. However, the Tenth Circuit has made it equally clear that when the ALJ provides specific reasons for his credibility determination and links the credibility determination to the evidence, the presence of boilerplate language will not require remand. *Cf. Boehm v. Astrue*, 2013 WL 541067 at *2 (10th Cir. 2013) (rejecting the same argument advanced in this case in another appeal argued by Plaintiff's counsel), *Polson v. Astrue*, 2013 WL 238849 at *2

9

(10th Cir. 2013) (same), *Strickland v. Astrue*, 2013 WL 3935755 at *7 (10th Cir. 2012) (same).

The ALJ supported his credibility findings and appropriately related them to the record. [R. 25]. The court is able to follow the ALJ's reasoning and finds that the credibility determination has support in the record.

### Consideration of Third Party Statements

The record contains third party statements from Plaintiff's niece, sister, and neighbor. [R. 186-193, 218-221, 222]. The ALJ thoroughly discussed the niece's statement, compared it with Plaintiff's function report, and found the allegations appear exaggerated when compared with the more recent evidence of mental health treatment. [R. 25-26]. Plaintiff argues that the ALJ's decision should be reversed because the ALJ did not also address the statements submitted by Plaintiff's sister and his neighbor. According to Plaintiff, the ALJ failed to adhere to regulatory requirements concerning third party statements and therefore the ALJ's conclusions are not based on the evidence as a whole. Plaintiff argues that the ALJ failed to discuss the evidence he relied on as well as the significantly probative evidence the ALJ rejected as required by *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

*Clifton* does not strictly apply to this case as *Clifton* dealt with the ALJ's failure to discuss the medical evidence in the context of his finding at step three that the claimant did not met the Listings of Impairments. *Clifton* did not address the ALJ's treatment of written statements submitted by non-medical third parties. The Commissioner's regulations, 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3), provide that in addition to evidence from medical sources, the Commissioner *may* use information from other sources to show the severity

of impairments and how the ability to work is affected. Such "other" sources include, for example spouses, parents, other care givers, neighbors, siblings, other relatives, and clergy. The regulations do not address how the information from these other sources is to be evaluated. There is certainly no requirement that the ALJ has to specifically discuss this evidence. *Social Security Ruling* (SSR) 06-03p, 2006 WL 2263437, addresses how opinions and other evidence from sources who are not considered acceptable medical sources in the regulations are to be considered. The Ruling does not make any requirements that the information from "other" sources be evaluated or discussed in any particular manner. The Ruling merely states it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and other factors that tend to support or refute the evidence.

In published opinions, the Tenth Circuit has addressed the ALJ's treatment of <u>testifying</u> witnesses. In *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) the claimant's wife testified at the hearing, but the ALJ did not make a written finding about her credibility. The Court noted that the ALJ's written decision reflected that he considered the testimony because he referred to it in his decision. The Court declined to adopt a rule requiring the ALJ to make specific written findings of each witnesses' credibility. In another case, *Blea v. Barnhart*, 466 F.3d 903, 914-915 (10th Cir. 2006), the claimant's wife testified before the ALJ, but the ALJ did not mention the testimony or the fact that she testified in the written decision. The Court found that the ALJ erred in failing to discuss the wife's testimony, especially because her testimony was uncontroverted but also corroborated a psychiatric examination.

In the instant case, the lay witnesses did not testify at the hearing. They merely submitted written statements. The Tenth Circuit has not required the ALJ to mention such written statements. In *Brescia v. Astrue*, 287 Fed. Appx. 626, 630-631 (10th Cir. 2008), the claimant's sister and a friend provided written descriptions of the claimant's limitations, which the ALJ did not explicitly discuss. The Court stated the ALJ's omission was not grounds for remand given the nature of the statements which were largely cumulative of the claimant's testimony. Further, relying on *Hackett v. Barnhart*, 355 F.3d 1168, 1171 (10th Cir. 2005), the Court stated it would take the ALJ at his word that he considered all of the evidence. In this case the ALJ repeatedly stated he considered all of the evidence. [R. 13, 15, 19]. Further, the ALJ discussed one of the third party statements in detail. The undersigned finds no error in the ALJ's treatment of third party statements.

## Conclusion

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before October 5, 2016.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 21st day of September, 2016.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE